Dale Cobb















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-320-CR

     DALE COBB,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 97-309-C
                                                                                                                
                                                                                                           
O P I N I O N
                                                                                                                

      A bounty hunter, representing himself to be a police officer, arrested a civilian. The bounty
hunter was convicted of impersonating a public servant and brings this appeal. He complains that
(1) the trial court improperly limited cross-examination, (2) the evidence was insufficient to prove
he arrested the citizen and (3) the indictment against him should have been dismissed because it
was untimely returned. Finding the trial court did not commit any of the errors complained of,
we affirm the conviction.
FACTUAL BACKGROUND
      Dale Cobb, a self-employed bounty hunter, approached Wayne Sinn, a maintenance man at
the La Mirage Two apartments in Waco, Texas, looking for Jeanette Eastland. He told Sinn that
he was a police officer and that he had a warrant for Eastland’s arrest. While telling Sinn this
information, Cobb thumbed through paperwork which Sinn believed to be official documents. 
Cobb was dressed in plain clothes but had handcuffs and possibly a handgun in his belt. Sinn did
not recognize the description Cobb gave of Eastland and brought Ernest Mendez, another
maintenance man, into the conversation. Mendez also did not recognize the description given. 
Cobb left and returned in a short while with a photograph of Eastland. Mendez recognized her
as a resident of the apartments.
      Cobb asked the two men for a key to her apartment, assuring them that it would be okay
because he was a police officer. The men reluctantly gave Cobb a key. Cobb then asked Sinn and
Mendez to enter Eastland’s apartment for him. They refused. Cobb took the key, and Sinn
watched him place the key in Eastland’s apartment door. Cobb announced that he was
“maintenance,” and when Eastland opened the door for him, she asked if he was there to fix her
sink. Once inside, Cobb told Eastland that he was not “maintenance” but was a police officer and
had a warrant for her arrest. Cobb also told Eastland that he was going to have to take her to jail
and that she had to accompany him. Eastland left her apartment with Cobb.
      The two left in Cobb’s pickup and went to Eastland’s bail bondsman. While there, Cobb
made several telephone calls. Cobb and Eastland then drove back to Eastland’s apartment because
Cobb felt Eastland needed a long-sleeved shirt before going to jail. At the apartment complex,
they encountered Sinn who asked Cobb to explain to the apartment manager why Sinn had given
him the key to Eastland’s apartment. Cobb explained to Manager Alicia Mead and Asst. Manager
Wendy Bosche that he was a police officer and had requested the key from Sinn. When asked to
see the warrant he had for Eastland, Cobb responded that he no longer had it.
      Cobb and Eastland left the apartment complex. Cobb ran several errands because, as he told
Eastland, the jail did not have a copy of the warrant yet. Eventually, Cobb told Eastland that the
warrant had arrived at the jail and that it was time to take her in. Cobb told the jailors that
Eastland was there to turn herself in on the outstanding warrant.
MOTIVE TO TESTIFY
      Eastland denied receiving any special benefits, including receiving a personal recognizance
bond, for testifying against Cobb. Because of her testimony, Cobb called Sgt. Joe Coy of the
Texas Department of Public Safety to testify about Eastland’s potential involvement in a cocaine
distribution conspiracy. The trial court did not permit Coy to testify about some of the
information Cobb wanted in evidence.
      In his first issue, Cobb complains that the trial court erred in limiting his “cross-examination”
of Eastland. Actually, the focus of this issue is not on the cross-examination of Eastland in the
traditional sense. Rather, the focus of this issue is on impeachment by the use of another witness. 
Coy was called in furtherance of Cobb’s attempted impeachment of Eastland, to show Eastland’s
motive to testify favorably for the State and against Cobb. Cobb argues that Eastland received
some benefit from the State by testifying against him and that the trial court did not allow Coy to
testify to certain things showing Eastland’s motive to testify. Specifically, Cobb claims that Coy
was not allowed to testify that the federal authorities had reviewed Eastland’s case, but did not
indict her, and that the State did not prosecute Eastland due to an agreement with the United States
Attorney’s Office. Because Cobb feels the trial court did not allow Coy to testify about those
topics, he contends the trial court erroneously limited his cross-examination of Eastland.
Applicable Law
      Wide latitude is allowed in cross-examination when the purpose is to bring out facts which
will give the jury the attitude, motive or interest which may be affecting the testimony of a
witness. Jackson v. State, 482 S.W.2d 864, 867 (Tex. Crim. App. 1972); see also Chambers v.
State, 866 S.W.2d 9, 26 (Tex. Crim. App. 1993), cert. denied, 511 U.S. 1100, 114 S.Ct. 1871,
128 L.Ed.2d 491 (1994). The right to impeach the witness does not stop with the right to cross-examine the witness. Rodriquez v. State, 934 S.W.2d 881, 885 (Tex. App.—Waco 1996, no pet.). 
If on cross-examination, the witness denies anything that would show a motive to testify against
a party, such motive may be shown by other witnesses and independent facts. Id., citing Jackson,
482 S.W.2d at 867. Here, Cobb wanted to show Eastland’s motive by the testimony of Coy.
      Cobb’s right to cross-examination on motive is limited by the trial court’s authority to prevent
confusion of the issues, harassment, needless delay, undue prejudice, and repetitive and irrelevant
or marginally relevant evidence. Chambers, 866 S.W.2d at 26; Rodriquez, 934 S.W.2d at 885. 
The parameters of cross-examination for showing motive rests on the sound discretion of the trial
court, and its determination is not reversible unless the appellant shows a clear abuse of discretion. 
Id. 
Testimony Developed
      Coy was permitted to testify that he investigated drug conspiracy cases and that he arrested
Eastland and her boyfriend Pasqual Calunga on October 30, 1996, for possession of cocaine over
four ounces. No drugs, however, were found on Eastland. After her arrest for possession, Coy
took Eastland to her apartment where Eastland consented to the search of her apartment. Evidence
of drug activity, scales, a pistol, and drug ledger sheets, was found in one of the bedrooms. The
drug ledger sheets appeared to be in Calunga’s handwriting. The evidence found indicated to Coy
that one or more persons were involved in the trafficking of illegal drugs.
      Coy further testified that he did not request Eastland be released on a personal recognizance
bond. It was undisputed through other witnesses that Eastland was, in fact, released on a personal
recognizance bond. Cobb maintained at trial that the personal recognizance bond was one of the
special benefits Eastland received for testifying against him.
      Coy further testified that Eastland was an untruthful person because she continued to deny her
involvement in drug trafficking when there was ample evidence of her involvement. Calunga was
indicted by the federal authorities; however, Eastland was not indicted. 
Excluded Testimony
      In a bill of exception, Coy testified that he believed the District Attorney’s Office had
“retired” the DA’s case against Eastland so that it could be pursued in federal court. He believed
the federal authorities had been asked to take “a number” of cases, including Eastland’s case. Coy
also agreed that the District Attorney’s Office did not ask the federal authorities to not prosecute
Eastland. The decision to pursue Eastland’s case through federal court rather than state court was
made jointly by Coy, the United States Attorney’s Office and Phil Frederick, whose connection
to the case is not apparent in the record.
Application
      Cobb complains that Coy was not allowed to testify that the federal authorities reviewed
Eastland’s drug possession case but did not indict her. The fact that Eastland was not indicted was
presented to the jury. There was no direct testimony that the federal authorities actually reviewed
Eastland’s case. This was certainly implied. Additionally, the fact that the State was not going
to prosecute Eastland because the federal authorities were handling the case was not relevant to
Eastland’s motive to testify against Cobb. Therefore, the trial court did not abuse its discretion
in not allowing Coy to testify concerning these topics. Cobb’s first issue is overruled.
LEGAL SUFFICIENCY
      In his second issue, Cobb contends the evidence was legally insufficient to convict him of
impersonating a public servant. The statute provides that a person commits the offense of
impersonating a public servant if he impersonates a public servant with the intent to induce another
to submit to his pretended official authority or to rely on his pretended official acts. Tex. Pen.
Code Ann. § 37.11(a)(1) (Vernon Supp. 1999). The indictment charged Cobb with
“impersonat[ing] a peace officer with intent to induce JEANETTE EASTLAND to submit to his
pretended official authority by arresting her....” Cobb contends, and the State agrees, that the
phrase “by arresting her” was an additional element the State had to prove. Consequently, Cobb
specifically contends that the State failed to prove the additional element of arrest beyond a
reasonable doubt. Thus, the only question for us to determine is whether the evidence was legally
sufficient to prove Cobb had arrested Eastland.
Applicable Law
      The proper standard of review for a legal insufficiency question is to view the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Moreno v. State, 755 S.W.2d 866, 867
(Tex. Crim. App. 1988); Alvarado v. State, 912 S.W.2d 199, 207 (Tex. Crim. App. 1993). The
verdict must stand unless it is found to be irrational or unsupported by more than a "mere
modicum" of the evidence. Moreno, 755 S.W.2d at 867. Additionally, the trier of fact is the sole
judge of the weight and credibility of the witnesses and may believe all, none, or part of any
witness’ testimony. DeLeon v. State, 937 S.W.2d 129, 131 (Tex. App.—Waco 1996, pet. ref’d). 
      To prove an arrest has occurred, the evidence must show that a reasonable person believed
he or she was not free to leave, and that person had yielded to the officer’s show of authority or
had been physically forced to yield. Johnson v. State, 912 S.W.2d 227, 236 (Tex. Crim. App.
1995); see also State v. Skiles, 938 S.W.2d 447, 452-453 (Tex. Crim. App. 1997).
Evidence
      Cobb represented himself as a police officer to Wayne Sinn, Ernest Mendez, Alicia Mead,
Wendy Bosche, and most importantly, Jeanette Eastland. He also told this same group of people
that he had a warrant for Eastland’s arrest. Cobb had handcuffs and possibly a gun in his belt.
      When Cobb entered Eastland’s apartment after claiming to be a maintenance man, he told
Eastland that he was a police officer and had a warrant for her arrest. He also told Eastland that
he had to take her to jail and that she had to go with him. Eastland explained that she
accompanied Cobb because he represented himself as a police officer, had a warrant for her arrest
and had a picture of her. She submitted to his show of authority. 
      Although Eastland was not handcuffed, she never ran from Cobb. She testified she did not
run because he said he was a police officer, and she did not want to get into any more trouble by
running away. Eastland stressed that she did not want to go with Cobb but believed she had to
do what he instructed because of his position as a police officer. During the entire incident,
Eastland believed Cobb was a police officer.
Application
      Even though Cobb never told Eastland, “You are under arrest” and never read her any
constitutional warnings, the evidence established that Eastland believed she was not free to leave
Cobb’s company and that she yielded to Cobb’s show of authority. These are the prerequisites
to an arrest. Thus, the evidence was legally sufficient to establish that Cobb arrested Eastland,
and Cobb’s second issue is overruled.
UNTIMELY RETURNED INDICTMENT
      In his third issue, Cobb claims that the trial court should have dismissed his indictment with
prejudice because it was returned untimely according to article 32.01 of the Code of Criminal
Procedure. Tex. Code Crim. Proc. Ann. art. 32.01 (Vernon Supp. 1999). Because Cobb was
arrested on September 30, 1996, we must apply the law in effect at the time Cobb was arrested
to determine whether the trial court erred in denying his motion to dismiss with prejudice. 
Applicable Law
      At the time of his arrest, article 32.01 provided:
When a defendant has been detained in custody or held to bail for his appearance to
answer any criminal accusation before the district court, the prosecution, unless otherwise
ordered by the court, for good cause shown, supported by affidavit, shall be dismissed
and the bail discharged, if indictment or information be not presented against such
defendant at the next term of the court which is held after his commitment or admission
to bail.

Act of May 27, 1965, 59th Leg., R.S., ch. 722, § 1, 1965 Tex. Gen. Laws 317, 441 (amended
1997) (current version at Tex. Code Crim. Proc. Ann. art. 32.01 (Vernon Supp. 1999)).
Also at the time of Cobb’s arrest, article 28.061 provided:
 
If a motion to set aside an indictment, information, or complaint for failure to
provide a speedy trial is sustained, the court shall discharge the defendant. A discharge
under this article or Article 32.01 of this code is a bar to any further prosecution for the
offense discharged and for any other offense arising out of the same transaction, other
than an offense of a higher grade that the attorney representing the state and prosecuting
the offense that was discharged does not have the primary duty to prosecute.

Act of June 1, 1987, 70th Leg., R.S., ch. 383, § 1, 1987 Tex. Gen. Laws 1885 (amended 1997)
(current version at Tex. Code Crim. Proc. Ann. art. 28.061 (Vernon Supp. 1999)).
      This Court analyzed these same provisions and determined that although article 32.01 was not
unconstitutional, article 28.061 impermissibly intruded upon a prosecutor’s discretion and was
unconstitutional. Frenzel v. State, 963 S.W.2d 911, 915, 916 (Tex. App.—Waco 1998, pet.
ref’d). In Frenzel, because we determined that article 32.01 was not unconstitutional but that
article 28.061 was unconstitutional, we relied on cases prior to the 1987 amendment of article
28.061 which made it applicable to article 32.01 and held that a failure to obtain a ruling on an
article 32.01 complaint prior to being indicted rendered the complaint moot. Id. at 916; see also
Holleman v. State, 945 S.W.2d 232, 236 (Tex. App.—Amarillo 1997, pet. ref’d).
      Cobb has requested us to reconsider our position in this matter. We see no reason to do so. 
The Corpus Christi court was recently faced with a similar situation and agreed with our position
that article 28.061 is unconstitutional. Smith v. State, No. 13-97-512-CR, slip op. at 19 (Tex.
App.—Corpus Christi July 15, 1999). Also, the Court of Criminal Appeals has reaffirmed that
article 32.01 has no application once an indictment is returned. Brooks v. State, 990 S.W.2d 278,
285 (Tex. Crim. App. 1999).
Application
      Cobb was indicted on April 9, 1997. He filed his motion to dismiss with prejudice on
October 9, 1997. Because the motion to dismiss was filed six months after his indictment was
returned by the grand jury, his complaint is moot. Id.; Frenzel, 963 S.W.2d at 916. The trial
court did not err in denying his motion to dismiss, and Cobb’s third issue is overruled.
CONCLUSION
      Having overruled all three issues raised on appeal, Cobb’s conviction is affirmed.


                                                                         TOM GRAY
                                                                         Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed September 8, 1999
Do not publish